

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

---

### NO. 2-07-383-CR

---

FRANCO ANDRE GOYZUETA                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM COUNTY COURT AT LAW NO. 1 OF WICHITA COUNTY

------------

## OPINION

------------

### I. INTRODUCTION

Appellant Franco Andre Goyzueta appeals his conviction for violation of a permanent injunction under the "gang injunction statute." *See* TEX. PENAL CODE ANN. § 71.021 (Vernon 2003); TEX. CIV. PRAC. & REM. CODE ANN. § 125.065 (Vernon 2005). Goyzueta pleaded guilty to the offense, and pursuant to a plea bargain agreement with the State, the trial court sentenced him to 300 days' confinement in the Wichita County Jail and a $4,000 fine.

In four issues, Goyzueta argues that both section 71.021 of the Texas Penal Code and the permanent injunction's curfew restriction are unconstitutionally vague and overbroad and that section 125.065(a)(2) of the Texas Civil Practice and Remedies Code—authorizing entry of the permanent injunction underlying Goyzueta's conviction—violates the separation of powers doctrine. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On August 31, 2006, the State filed its "Original Petition for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction." The petition named twenty-one members of the street gang, Varrio Carnales ("VC"), including Goyzueta, who had allegedly engaged in criminal activity. The petition listed twenty-nine activities the State sought to prohibit the named defendants from engaging in.

Subsequently, the judge of the 89th District Court of Wichita County, Texas entered an order for a permanent injunction under section 125.065 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 125.065. The permanent injunction contained a curfew restriction,

2

prohibiting Goyzueta from "riding about in a public place after 11 p.m. and before 6 a.m. of the immediately following day."[1]

A week after the permanent injunction was signed, at approximately 12:43 a.m., Officer Joe R. Esteves, a Wichita Falls police officer, observed a car that failed to signal a left turn. Officer Esteves pulled the car over and saw eighteen-year-old Goyzueta in the car. According to Officer Esteves, he knew that Goyzueta was a VC member and that he was under the gang injunction imposed by the City of Wichita Falls. Officer Esteves consequently arrested Goyzueta for violating the court order enjoining organized criminal activity, namely, "riding about in a public place after 11 p.m. and before 6 a.m. of the immediately following day."

Goyzueta filed a motion to dismiss the charge against him, raising several constitutional challenges to the applicable statutes. Goyzueta did not file any other pretrial motions. After a hearing on his motion to dismiss, Goyzueta and the State reached the above-mentioned plea bargain agreement. Goyzueta now appeals; his appeal is limited by the rules of appellate procedure and by the trial

---

[1] The record before us regarding Goyzeta's criminal conviction, does not contain a copy of the civil permanent injunction. But the parties agree, and the indictment alleged, that it contained a "curfew provision" prohibiting anyone subject to the injunction from "riding about in a public place after 11 p.m. and before 6 a.m. of the immediately following day."

court's certification of his right to appeal, which restrict Goyzueta to re-urging the issues he raised in his motion to dismiss. *See* TEX. R. APP. P. 25.2(a)(2)(A).

### III. THE APPLICABLE STATUTES

Section 125.065 of the civil practice and remedies code outlines when a trial court can enter a temporary or permanent order against a criminal street gang member. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 125.065. The statute provides:

> (a) If the court finds that a combination or criminal street gang constitutes a public nuisance, the court may enter an order:
>
>> (1) enjoining a defendant in the suit from engaging in the gang activities of the combination or gang; and
>>
>> (2) imposing other reasonable requirements to prevent the combination or gang from engaging in future gang activities.
>
> (b) If the court finds that a place is habitually used in a manner that constitutes a public nuisance, the court may include in its order reasonable requirements to prevent the use of the place for gang activity.

*Id.* Section 71.021 of the penal code describes the offense of violation of a court order enjoining organized criminal activity:

> (a) A person commits an offense if the person knowingly violates a temporary or permanent order issued under Section 125.065(a) or (b), Civil Practice and Remedies Code.

4

(b) If conduct constitutes an offense under this section also constitutes an offense under another section of this code, the actor may be prosecuted under either section or under both sections.

(c) An offense under this section is a Class A misdemeanor.

Tex. Penal Code Ann. § 71.021.

## IV. Constitutionality of Penal Code Section 71.021

In his first and second issues, Goyzueta argues that section 71.021 of the Texas Penal Code is unconstitutionally vague and overbroad.[2] The parties contend that this is a case of first impression in Texas as no other court has addressed the constitutionality of the gang injunction statute.

The constitutionality of a criminal statute is a question of law which we review de novo. *Owens v. State*, 19 S.W.3d 480, 483 (Tex. App.—Amarillo 2000, no pet.); *State v. Salinas*, 982 S.W.2d 9, 10–11 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd). Whenever we are confronted with an attack upon the constitutionality of a statute, we presume that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Rodriguez v. State*, 93

---

[2] The statement of facts portion of Goyzueta's appellate brief recites numerous problematic procedural facts concerning the issuance of the initial temporary and permanent injunctions pursuant to Texas Civil Practice and Remedies Code section 125.065. Goyzueta did not, however, appeal from the temporary or permanent injunction and in his statement of issues on appeal challenges the constitutionality of section 125.065 based only on separation of powers grounds.

5

S.W.3d 60, 69 (Tex. Crim. App. 2002); *Ex parte Dave*, 220 S.W.3d 154, 156 (Tex. App.—Fort Worth 2007, pet. ref'd), *cert. denied*, 128 S. Ct. 628 (2007). The burden rests upon the individual who challenges the statute to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69; *Ex parte Dave*, 220 S.W.3d at 156. In the absence of contrary evidence, we will presume that the legislature acted in a constitutionally sound fashion. *Rodriguez*, 93 S.W.3d at 69. The statute must be upheld if a reasonable construction can be ascertained that will render the statute constitutional and carry out the legislative intent. *Shaffer v. State*, 184 S.W.3d 353, 363 (Tex. App.—Fort Worth 2006, pet. ref'd); *see also Ely v. State*, 582 S.W.2d 416, 419 (Tex. Crim. App. [Panel Op.] 1979).

When an appellant challenges a statute as both unconstitutionally overbroad and vague, we address the overbreadth challenge first. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494, 102 S. Ct. 1186, 1191 (1982); *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *Byrum v. State*, 762 S.W.2d 685, 687 (Tex. App.—Houston [14th Dist.] 1988, no pet.).

## A. Overbreadth Challenge

Goyzueta contends that section 71.021 is unconstitutionally overbroad because the statute is open-ended and allows the trial judge to determine what conduct is prohibited.[3]

An overbreadth attack on a statute is recognized only in the context of a First Amendment challenge. *United States v. Salerno*, 481 U.S. 739, 107 S. Ct. 2095 (1987). In analyzing a facial overbreadth challenge to a law, we first determine if the statute reaches a substantial amount of constitutionally protected conduct. *Village of Hoffman Estates*, 455 U.S. at 494, 102 S. Ct. at 1191; *State v. Holcombe*, 145 S.W.3d 246, 250 (Tex. App.—Fort Worth 2004), *aff'd*, 187 S.W.3d 496 (Tex. Crim. App.), *cert. denied*, 127 S. Ct. 176 (2006). A statute will not be invalidated under the overbreadth doctrine merely

---

[3] The State argues that Goyzueta did not properly preserve his overbreadth challenge; it urges that Goyzueta's facial overbreadth challenge to section 71.021 was only superficially and not specifically mentioned in Goyzueta's motion to dismiss and points out that no as-applied overbreadth challenge to section 71.021 was made in the trial court. The record reflects that Goyzueta properly preserved his facial overbreadth challenge to section 71.021 in his motion to dismiss and at the hearing on it. Additionally, Goyzueta's arguments on appeal concerning the alleged unconstitutionality of section 71.021 based on the overbreadth doctrine are facial challenges. We therefore address those arguments. We agree with the State, however, that Goyzueta did not raise an as-applied overbreadth challenge to section 71.021 in the trial court and that issue is not before us. *See* TEX. R. APP. P. 25.2(a)(2)(A); *Sullivan v. State*, 986 S.W.2d 708, 711 (Tex. App.—Dallas 1999, no pet.).

because it is possible to imagine some unconstitutional applications. *Holcombe*, 145 S.W.3d at 250 (citing *Village of Hoffman Estates*, 455 U.S. at 494, 102 S. Ct. at 1191). Rather, the wide-reaching effects of striking down a statute on its face, at the request of one whose own conduct may be punished despite the First Amendment, has caused the Supreme Court to recognize that the "overbreadth doctrine is 'strong medicine' and [courts should employ] it with hesitation, and then 'only as a last resort.'" *New York v. Ferber*, 458 U.S. 747, 769, 102 S. Ct. 3348, 3361 (1982); *Garcia v. State*, 212 S.W.3d 877, 888 (Tex. App.—Austin 2006, no pet.); *Holcombe*, 145 S.W.3d at 250.

The traditional rule is that "a person to whom a statute may constitutionally be applied may not challenge that statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the Court." *Los Angeles Police Dept. v. United Reporting Publ'g Corp.*, 528 U.S. 32, 38, 120 S. Ct. 483, 488 (1999). However, an exception to this rule is a First Amendment overbreadth challenge. *Ferber*, 458 U.S. at 769, 102 S. Ct. at 3361. We will not strike down a statute under the overbreadth doctrine unless there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Duncantell*, 230 S.W.3d at 843; *Garcia*, 212 S.W.3d at 888.

8

Goyzueta argues that section 71.021 is overbroad because it sweeps within its coverage speech or conduct that is protected by the First Amendment. We cannot agree. The purpose of the overbreadth doctrine is to protect First Amendment freedom of expression from laws written so broadly that the fear of punishment might discourage others from taking advantage of that freedom. *People v. Reynolds*, 706 N.E.2d 49, 53–54 (Ill. App. Ct. 1999). Here, section 71.021 forbids a person from "knowingly" violating a temporary or permanent order. TEX. PENAL CODE ANN. § 71.021. As such, the statute has a limited applicability because it applies only to individuals who are subject to a temporary or permanent order and who knowingly violate that order. *See Garcia*, 212 S.W.3d at 888 (holding that section 25.07(a) of the penal code only applies to individuals who are subject to a court order).

A statute that forbids intentional conduct is rarely subject to a facial overbreadth challenge. *See Sullivan*, 986 S.W.2d at 712 (citing *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 35, 83 S. Ct. 594, 599 (1963), which determined that an individual violates section 21.11(a)(1) of the penal code if that person has the requisite intent, and *Screws v. United States*, 325 U.S. 91, 101–03, 65 S. Ct. 1031, 1035–36 (1945)); *Byrum*, 762 S.W.2d at 687 (holding penal code sections 21.07(a)(3) and 21.01(2) are not overbroad because they forbid only knowing, intentional acts). Here, to violate section

9

71.021, a person must violate a temporary or permanent injunction with the requisite intent (i.e., knowingly).

Goyzueta does not assert that a particular word or phrase in the statute is overbroad nor does he describe what specific protected First Amendment conduct or speech has been infringed upon by the statute. Instead, Goyzueta merely complains that the statute itself is overbroad. Accordingly, after examining section 71.021, we cannot say that it restricts a substantial amount of constitutionally protected conduct because the only conduct that it restricts is a knowing violation of a court order. *See Village of Hoffman Estates*, 455 U.S. at 494, 102 S. Ct. at 1191. Thus, we hold that the statute is not unconstitutionally overbroad. Having determined that Goyzueta has failed to show that section 71.021 is overbroad, we overrule Goyzueta's second issue.

### B. Void for Vagueness

In his first issue, Goyzueta asserts that section 71.021 is facially unconstitutional because it fails to provide adequate notice of what conduct is prohibited. The State argues that section 71.021 is constitutional because it clearly defines the prohibited conduct and it applies only to a defendant's *knowingly* improper actions.

A statute is void for vagueness if it fails to define the criminal offense "with sufficient definiteness that ordinary people can understand what conduct

is prohibited and in a manner that does not permit arbitrary and discriminatory enforcement." *Lawrence v. State*, 240 S.W.3d 912, 915 (Tex. Crim. App. 2007), *cert. denied,* 128 S. Ct. 2056 (2008) (quoting *State v. Holcombe*, 187 S.W.3d 496, 499 (Tex. Crim. App.), *cert. denied*, 127 S. Ct. 176 (2006); *Stevens v. State*, 817 S.W.2d 800, 804 (Tex. App.—Fort Worth 1991, pet. ref'd). If, as in this case, a statute does not substantially implicate constitutionally protected conduct or speech, it is valid unless it is "impermissibly vague in all applications" or as applied to the defendant. *Lawrence*, 240 S.W.3d at 915 (quoting *Holcombe*, 187 S.W.3d at 499).

A facial challenge to a statute is the most difficult challenge to mount successfully because the challenger must establish that no set of circumstances exists under which the statute will be valid. *Shaffer*, 184 S.W.3d at 364; *see also Santikos v. State*, 836 S.W.2d 631, 633 (Tex. Crim. App.), *cert. denied*, 506 U.S. 999 (1992). Because a statute may be valid as applied to one set of facts and invalid as applied to another, it is incumbent upon the appellant to first show that in its operation, the statute is unconstitutional as to him in his situation; that it may be unconstitutional as to others is not sufficient. *Shaffer*, 184 S.W.3d at 364; *see also Santikos*, 836 S.W.2d at 633. That is, the reviewing court *must look at appellant's conduct alone*, and then the court

11

must examine whether that conduct was clearly prohibited by the statute. *Cain v. State*, 855 S.W.2d 714, 718 (Tex. Crim. App. 1993).

In determining whether a statute provides adequate guidelines for its enforcement, the reviewing court may consider hypothetical situations to determine whether the guidelines are adequate. *Margraves v. State*, 34 S.W.3d 912, 921 (Tex. Crim. App. 2000). Initially, though, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. *Santikos*, 836 S.W.2d at 633.

We will first examine whether section 71.021 provides sufficient information so that a person of ordinary intelligence would know that his conduct was prohibited. *See Lawrence*, 240 S.W.3d at 915. Goyzueta was charged with violating section 71.021 by "riding about in a public place after 11 p.m. and before 6 a.m. of the immediately following day." Although Goyzueta does not make an "as applied" argument per se regarding this issue, we will liberally construe his brief so as to include an "as applied" challenge. *See* TEX. R. APP. P. 38.1(e), 38.9; *Akins v. State*, 202 S.W.3d 879, 892 (Tex. App.—Fort Worth 2006, pet. ref'd).

Goyzueta argues that the statute is vague because a person of ordinary intelligence would not be able to ascertain what conduct is prohibited. We

cannot agree. A statute must clearly express the crime and the elements constituting it so that an ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue. *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 127 (1926). The plain language of the statute states that the prohibited conduct is a violation of a temporary or permanent order issued under section 125.065 of the civil practice and remedies code. *See* TEX. PENAL CODE ANN. § 71.021.

Thus, the language of the statute would have given an individual in Goyzueta's situation clear notice that violating the curfew restriction in the permanent injunction would amount to a criminal offense. Further, Goyzueta voluntarily agreed to the permanent injunction. *See, e.g.*, *Jackson v. State*, 76 S.W.3d 798, 802 (Tex. App.—Corpus Christi 2002, no pet.) (noting that if appellant agreed to waive jury trial she cannot now complain about something she requested through counsel). Thus, Goyzueta not only knew that he was subject to a permanent injunction, he also knew that the injunction contained a curfew provision.

Goyzueta acknowledged in his brief that he was aware that other VC members were arrested for violating the temporary injunction. As such, we determine that a person similarly situated, who agreed to the permanent injunction and knew that arrest was a possibility for violating the injunction,

13

would understand that riding about in a public place at 12:43 a.m. is prohibited.

Goyzueta further complains that the statute permits arbitrary and discriminatory enforcement. He argues that the statute authorizes law enforcement officers to arrest an injunction member if the officer reasonably believes that the individual is in violation of a court order. He contends that the statute is unconstitutionally vague because it does not state, on its face, what conduct is prohibited.

We construe Goyzueta's argument to complain that the statute was arbitrarily applied to him because the arresting officer believed that he was under a permanent injunction and that the injunction contained a curfew provision. However, the arresting officer stated that he knew that Goyzueta was a VC member and that he was under the gang injunction. The arresting officer further stated that Goyzueta was in violation of the permanent injunction because he was violating the curfew provision. Thus, Goyzueta cannot demonstrate that the officer acted arbitrarily because the officer stated that he knew that Goyzueta was in violation of the permanent injunction. *See Shaffer*, 184 S.W.3d at 365 (holding that fact that officer recognized appellant did not establish that officer acted arbitrarily).

Additionally, Goyzueta cites to *Chicago v. Morales*, a United States Supreme Court opinion, to support his contention that the statute permits

14

arbitrary and discriminatory enforcement.  527 U.S. 41, 119 S. Ct. 1849 (1999).  In *Morales*, the City of Chicago passed an ordinance that prohibited gang members from loitering in public places.  *Id.* at 46–47, 119 S. Ct. at 1854.  The ordinance provided in relevant part that

> [w]henever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area.  Any person who does not promptly obey such an order is in violation of this section.

*Id.* at 47 n.2, 119 S. Ct. at 1854.

In holding that the gang loitering ordinance was unconstitutionally vague, the Court determined that the ordinance did not provide law enforcement with any guidelines.  *Id.* at 60, 119 S. Ct. at 1861.  The ordinance, as written, authorized police officers to order any individual, whether a gang member or not, to disperse if the officer was not aware of their purpose.  *Id.* at 63, 119 S. Ct. at 1862.

However, unlike the ordinance in *Morales*, section 71.021 does provide law enforcement officers with guidelines and prevents arbitrary and discriminatory enforcement. *Compare* TEX. PENAL CODE ANN. § 71.021 *with Morales*, 527 U.S. at 47 n.2, 119 S. Ct. at 1854. Section 71.021 authorizes an officer to arrest an individual for violating a restriction in a temporary or

15

permanent order *only if* that individual is subject to the order. TEX. PENAL CODE ANN. § 71.021. As such, an officer cannot arrest someone under the statute unless the officer knows that the individual is subject to a court order and is violating a court-imposed restriction.

Accordingly, we hold that section 71.021 was not unconstitutional as applied to Goyzueta.[4] Thus, Goyzueta cannot establish that the statute is unconstitutional as applied to all convicted persons. *See Shaffer*, 184 S.W.3d at 364. As such, Goyzueta has failed to establish that under no set of circumstances would the statute be valid. *See id.* at 365. We overrule Goyzueta's first issue.

### V. SECTION 125.065 AND THE SEPARATION OF POWERS DOCTRINE

In his third issue, Goyzueta argues that section 125.065 of the civil practice and remedies code violates the separation of powers doctrine because it in effect allows a trial judge to create new criminal laws which when violated, create a class A misdemeanor. Goyzueta cites article two, section one and article three, sections thirty and forty-three of the Texas Constitution to support his contention. Article two, section one provides:

---

[4] Although we hold that Goyzueta has not demonstrated that under these particular facts the statute is unconstitutional as applied to him, we recognize that there could be instances in which this statute is unconstitutionally vague as applied to other individuals.

16

The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

TEX. CONST. art. II, § 1. The Separation of Powers Clause is violated (1) when one branch of government assumes power more properly attached to another branch or (2) when one branch unduly interferes with another branch so that the other cannot effectively exercise its constitutionally assigned powers. *In re D.W.,* 249 S.W.3d 625, 635 (Tex. App.—Fort Worth 2008, pet. denied). The power to pass laws and to revise the criminal laws of Texas is vested in the legislature. TEX. CONST. art. III, §§ 30, 43; *Beasley v. Molett*, 95 S.W.3d 590, 608 (Tex. App.—Beaumont 2002, pet. denied).

Initially, we recognize that this is an issue of first impression because no other court has addressed the issue of section 125.065 and the separation of powers doctrine. Although not directly on point, we determine that our sister courts' analyses regarding the Civil Commitment of Sexually Violent Predators Act, chapter 841 of the Texas Health and Safety Code, and the separation of powers doctrine to be persuasive.

17

Section 841.082 of the Texas Health and Safety Code states in relevant part that "[b]efore entering an order directing a person's outpatient civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. The requirements shall include: . . . (9) any other requirements determined necessary by the judge." TEX. HEALTH & SAFETY CODE ANN. § 841.082(a)(9) (Vernon Supp. 2008). Section 841.085 provides that "[a] person commits an offense if, after having been adjudicated and civilly committed as a sexually violent predator under this chapter, the person violates a civil commitment requirement imposed under Section 841.082." *Id.* § 841.085(a). An offense under section 841.085 is a third-degree felony. *Id.* § 841.085(b).

In *Beasley*, the Beaumont Court of Appeals examined sections 841.082 and 841.085 of the health and safety code*.* 95 S.W.3d at 607–609. In that case, the defendant asserted that section 841.085 of the health and safety code—when read in conjunction with section 841.082(9)—violated the separation of powers doctrine. *Id.* Specifically, he claimed that the separation of powers doctrine was violated because the trial judge had the authority to impose requirements the judge deemed necessary, thus granting the judge the power to create a third-degree felony. *Id.*

18

The Beaumont Court of Appeals rejected Beasley's argument, holding that the legislature did not delegate its authority to create third-degree felonies to the trial court. *Id.* at 609. The court reasoned that the legislature authorized the trial courts to impose requirements necessary to ensure compliance with the treatment and supervision of the committed person and to ensure the public's safety. *Id.* The court reasoned that it is the legislature that determined that violations of any of the statutory requirements, including those necessary requirements specified by the judge, are third-degree felonies. *Id.; see also In re Commitment of Petersimes*, 122 S.W.3d 370, 372 (Tex. App.—Beaumont 2003, pet. denied) (citing *Beasley* and denying appellant's separation of powers argument); *In re Commitment of Browning*, 113 S.W.3d 851, 865 (Tex. App.—Austin 2003, pet. denied) (holding that separation of powers doctrine not violated because legislature determined that violation of requirements, including judicially-imposed requirement, is an offense).

Here, the separation of powers doctrine is not violated merely because the legislature authorized trial courts to impose reasonable requirements not specifically listed in the statute to prevent known gang members from engaging in criminal activities. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 125.065(a)(2). The legislature has simply allowed trial courts to impose requirements to prevent a gang member from engaging in future gang activities while retaining

19

the authority to impose a class A misdemeanor for violating a court-imposed restriction. *Id.*; TEX. PENAL CODE ANN. § 71.021(c). As such, we hold that section 125.065 does not violate the separation of powers doctrine. Accordingly, we overrule Goyzueta's third issue.

## VI. CONSTITUTIONALITY OF INJUNCTION CURFEW PROVISION

In his final issue, Goyzueta asserts that the injunction curfew provision that he was charged with violating is unconstitutionally vague and overbroad. The State argues that Goyzueta failed to properly preserve error on this issue because he is raising it for the first time on appeal. We must agree.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. TEX. R. APP. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. TEX. R. APP. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Here, the trial court's certification of appeal specifically states that Goyzueta has the right to appeal matters raised "by written motion filed and

ruled on before trial and not withdrawn or waived." Goyzueta did not include an issue regarding the constitutionality of the curfew provision in his motion to dismiss. Accordingly, we hold that Goyzueta did not properly preserve this issue for our review.[5] Thus, we overrule Goyzueta's fourth issue.

## VII. CONCLUSION

Having overruled Goyzueta's four issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL: GARDNER, WALKER, and MCCOY, JJ.

PUBLISH

DELIVERED: August 26, 2008

---

[5] In his brief, Goyzueta lists two instances in which apparent fellow gang members under the temporary injunction were arrested. Goyzueta argues that the injunction restrictions that the gang members were allegedly charged with violating are overbroad. However, evidence supporting Goyzueta's statements that fellow VC members were arrested for violating the temporary order is not included in the appellate record. Because Goyzueta did not raise an issue regarding the constitutionality of the temporary or permanent injunction in his motion to dismiss, we hold that he has failed to preserve this issue for our review.

21